IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODY SCIENCE LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.: 11-cv-03619** |
| v. ) | |
| ) | Judge: |
| BOSTON SCIENTIFIC CORPORATION; ) | The Honorable Ruben Castillo |
| LIFEWATCH SERVICES, INC.; ) | |
| PHILIPS ELECTRONICS NORTH AMERICA ) | Magistrate Judge: |
| CORPORATION; POLAR ELECTRO, INC.; ) | The Honorable Maria Valdez |
| and A & D ENGINEERING, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**BOSTON SCIENTIFIC'S SUR-REPLY BRIEF REGARDING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

Pursuant to the Court's October 11, 2011 Order (Dkt. # 117), Boston Scientific Corporation ("Boston Scientific") respectfully submits its sur-reply brief. It responds to a new argument raised in Plaintiff Body Science LLC's ("Plaintiff" or "Body Science") reply brief filed in support of its motion to disqualify Boston Scientific's local counsel. (Dkt. #106, Plaintiff's Reply Br.)

**I.     INTRODUCTION**

Plaintiff has tried to further obscure the facts to create the impression of conflict. The simple facts are that Mr. Retsky did not represent LifeSync Corporation (formerly known as GMP/Wireless Medicine, Inc.) in the 2004 *Nonin* litigation, nor did he have "actual knowledge" regarding its protected information while at his prior firm or elsewhere. The patents at issue in *Nonin* were assigned to a separate entity, LifeSync Holdings, Inc., in 2010. Similarly, Mr. Retsky did not represent LifeSync Holdings, Inc., nor did he have "actual knowledge" of its

protected information.  As a result, Plaintiff's newly-articulated disqualification argument based on "GMP/LifeSync" fails.

Plaintiff's Reply Brief argues that "Retsky owes ethical duties to his present clients, former clients, and clients of his former law firms.  These clients include Motorola and *GMP/LifeSync*."  (Dkt. # 106, Plaintiff's Reply Br. at 2) (emphasis added).)  Boston Scientific has already refuted Plaintiff's Motorola-based argument by pointing out that under the particular terms of the Patent Purchase Agreement, Motorola has no interests in the present litigation.  (Dkt. # 95, Boston Scientific Opp. Br. at 3-7.[1])  This sur-reply brief addresses the new "GMP/LifeSync" argument.  As explained below, this argument is factually inaccurate and directly rebutted by the ABA's Comments on the applicable conflicts rules.

## II.   FACTUAL CLARIFICATIONS

Plaintiff's Reply Brief includes numerous references to "GMP/LifeSync" and a 2004 lawsuit captioned *Motorola, Inc. and GMP/Wireless Medicine, Inc. v. Nonin Medical, Inc.* (No. 04-CV-05944) (N.D. Ill.).  These references form the basis of Plaintiff's new argument in support of its motion to disqualify.  As a result, Boston Scientific (aided by a Declaration from the lawyer in question, Mr. Jonathan Retsky[2]) provides the following clarifications:

### A.   "GMP/LifeSync"

1. There is no entity named "GMP/LifeSync."  Plaintiff developed this name as a shorthand reference to GMP/Wireless Medicine, Inc. and LifeSync Holdings, Inc.

2. GMP/Wireless Medicine, Inc. was a co-plaintiff along with Motorola, Inc. in the lawsuit captioned *Motorola, Inc. and GMP/Wireless Medicine, Inc. v. Nonin Medical, Inc.* (No. 04-CV-05944) (N.D. Ill.) ("*Nonin*"

---

[1] Boston Scientific's Opposing Brief (Dkt. # 95) was filed under seal.  It filed a redacted version appearing at Dkt. # 96.
[2] Mr. Retsky remains walled off from the *Body Science v. Boston Scientific et al.* litigation while Plaintiff's motion to disqualify is pending.  His Declaration is limited solely to his prior involvement in the cited *Nonin* litigation.

lawsuit). (See Ex. 1. An excerpt from the *Nonin* Complaint is submitted as Ex. 1.)

3. GMP/Wireless Medicine, Inc. changed its name to LifeSync Corporation in 2006. (See Ex. 2. A copy of GMP/Wireless Medicine, Inc.'s corporate name change filings are submitted as Ex. 2.)

4. Plaintiff has misrepresented the GMP/Wireless Medicine, Inc. name change in its motion papers. Plaintiff erroneously claimed that GMP/Wireless Medicine, Inc. changed its name to LifeSync Holdings, Inc. as opposed to LifeSync Corporation. For example, it misidentified "LifeSync Holdings, Inc." as "a name change from GMP" in its opening brief. (Dkt. #41, Plaintiff's Opening Br. at 2.) It made this same misrepresentation in its response to Boston Scientific's motion to strike. (Dkt. #116, Plaintiff's Resp. Br. at 1.) Plaintiff did so despite submitting a Declaration from a LifeSync Holdings, Inc. corporate executive citing the corporate name change from GMP/Wireless Medicine, Inc. to LifeSync Corporation. (Dkt. #106-1 (Ex. B), Chicvara Decl. at 1.) LifeSync Holdings, Inc. is a separate entity and was *not* formerly known as GMP/Wireless Medicine, Inc. LifeSync Corporation was formerly known as GMP/Wireless Medicine, Inc. (See Ex. 2, name change filings.)

5. In 2010, Motorola, Inc. assigned to LifeSync Holdings, Inc. the patents asserted in the present *Body Science v. Boston Scientific, et al.* litigation. This assignment occurred pursuant to the Patent Purchase Agreement cited in Body Science's motion to disqualify and submitted to the Court with Boston Scientific's opposing brief. (Dkt. # 95-2, Exhibit # 1, Patent Purchase Agmt. at 2.1.[3]) As the owner of the asserted patents, LifeSync Holdings, Inc. was entitled to grant patent licenses.

6. The Patent Purchase Agreement referenced both LifeSync Holdings, Inc. and LifeSync Corporation as separate legal entities and clarified that the patents were assigned to LifeSync Holdings, Inc. and not LifeSync Corporation. (Dkt. # 95-2, Exhibit # 1, Patent Purchase Agmt. at p. 1 (opening paragraph defining LifeSync Holdings, Inc. as "Buyer")).

### B. The 2004 *Nonin* Lawsuit

7. Plaintiff's motion to disqualify Mr. Retsky and his law firm (Winston & Strawn) is based in significant part on a prior 2004 lawsuit, *Motorola, Inc. and GMP/Wireless Medicine, Inc. v. Nonin Medical, Inc.* (No. 04-CV-05944) (N.D. Ill.) ("*Nonin*" lawsuit). (Dkt. #41, Plaintiff's Mot. to Disqualify at 2-6.)

8. The parties in the *Nonin* lawsuit were co-plaintiffs Motorola, Inc. and GMP/Wireless Medicine, Inc., and defendant Nonin Medical, Inc. (Ex. 1, *Nonin* Complaint.) As explained in Para. 3 above, plaintiff GMP/Wireless

---

[3] The Patent Purchase Agreement was filed under seal.

Medicine, Inc. changed its name to LifeSync Corporation in 2006. (Ex. 2, Corporate name change filing.)

9. Original counsel of record for the co-plaintiffs in the 2004 *Nonin* lawsuit were Mr. Sternstein and Ms. Addy of Brinks Hofer Gilson & Lione. (See Ex. 3. Copies of plaintiffs' counsel's *Nonin* N.D. Ill. attorney appearance forms in 2004 are attached hereto as Ex. 3.)

10. Mr. Retsky did not represent GMP/Wireless Medicine, Inc. (or LifeSync Corporation after the name change) in the 2004 *Nonin* lawsuit. (Ex. 4 at Para. 7. A copy of the Declaration of Jonathan E. Retsky is submitted as Ex. 4.)

11. During his 2004 - 2007 tenure as a shareholder at Brinks Hofer Gilson & Lione, Mr. Retsky's primary responsibility was as the relationship partner for Motorola, Inc. work. Mr. Retsky is a licensed patent attorney with specialized skills in the fields of electrical engineering and telecommunications. He served as in-house patent counsel at Motorola from 2000-2004, where he managed a portfolio of more than 25,000 patents. However, he was not substantially involved in the prosecution of the patents at issue in *Nonin* while he was at Motorola or at Brinks Hofer. (Ex. 4, Retsky Decl. at Paras. 3-5.)

12. While at Brinks Hofer, Mr. Retsky was not responsible for day-to-day management of the *Nonin* lawsuit. As relationship partner for Motorola, Inc., he delegated day-to-day management of Motorola's activities in the *Nonin* case to his former colleague, Ms. Addy. (Ex. 4, Retsky Decl. at Para. 6.)

13. Mr. Retsky was not involved in the representation of GMP/Wireless Medicine, Inc. in the *Nonin* litigation or other matters, if any. Mr. Retsky did not receive any GMP/Wireless Medicine, Inc. confidential information or secrets while at Brinks Hofer or at any other time. (Ex. 4, Retsky Decl. at Paras. 7-8.)

14. On April 25, 2005, plaintiffs' counsel in the *Nonin* lawsuit filed "Plaintiffs' Counsel Meredith Addy's Agreed Motion to Withdraw Appearance on Behalf of GMP/Wireless Medicine, Inc." (See Ex. 5. A copy of the Addy Motion to Withdraw is attached hereto as Ex. 5.)

15. As set forth in Ms. Addy's April 25, 2005 Motion, Mr. Sternstein left the law firm of Brinks Hofer Gilson & Lione to join the law firm of Dykema Gossett. (Ex. 5, Addy Motion to Withdraw at Para. 1.) "Representation of plaintiff [GMP/Wireless Medicine, Inc.] has been transferred with Allan Sternstein to Dykema Gossett."[4] (Id. at Para. 2.)

16. On April 25, 2005, Ms. Addy of Brinks Hofer Gilson & Lione filed a revised appearance form solely on behalf of Motorola, Inc. in *Nonin* (Ex.

---

[4] Mr. Sternstein of Dykema Gossett is counsel of record for Plaintiff Body Science in the present *Body Science v. Boston Scientific et al.* litigation.

-4-

6. A copy of Ms. Addy's April 25, 2005 appearance form is submitted as Ex. 6.)

17. On April 25, 2005, plaintiffs' counsel in the *Nonin* lawsuit filed "Plaintiffs' Counsel Allan Sternstein's Agreed Motion to Withdraw Appearance on Behalf of Motorola, Inc." (See Ex. 7. A copy of the Sternstein Motion to Withdraw is submitted hereto as Ex. 7.)

18. On April 25, 2005, Mr. Sternstein of Dykema Gossett filed a revised appearance form solely on behalf of GMP/Wireless Medicine, Inc. in *Nonin*. (Ex. 8. A copy of Mr. Sternstein's April 25, 2005 appearance form is submitted as Ex. 8.)

19. On April 28, 2005, the *Nonin* court granted counsels' motions to withdraw. Ms. Addy of Brinks Hofer became counsel of record for Motorola, Inc. and Mr. Sternstein of Dykema Gossett became counsel of record for GMP/Wireless Medicine, Inc. (Ex. 9. A copy of the *Nonin* Court's April 28, 2005 minute order is submitted as Ex. 9.)

20. On May 14, 2007, Mr. Retsky entered an appearance on Motorola, Inc.'s behalf in *Nonin*. Mr. Retsky was a partner at the law firm Howrey LLP at that time. (See Ex. 10. A copy of Mr. Retsky's *Nonin* N.D. Ill. attorney appearance form is submitted as Ex. 10.)

21. On May 15, 2007, Ms. Addy of Brinks Hofer filed a motion to withdraw from representation of Motorola, Inc. in *Nonin*. (See Ex. 11. A copy of Ms. Addy's motion to withdraw is submitted as Ex. 11.)

### III. MR. RETSKY AND WINSTON & STRAWN OWE NO ETHICAL DUTIES TO LIFESYNC CORPORATION

Plaintiff's Reply Brief argues that "Retsky owes ethical duties to his present clients, former clients, and clients of his former law firms. These clients include Motorola[5] and GMP/LifeSync." (Dkt. # 106, Plaintiff's Reply Br. at 2.) Under Plaintiff's new conflict of interest theory, lawyers would owe ethical duties in perpetuity through the imputed conflicts rules to all former clients of all former law firms—including those clients who they neither personally represented nor obtained confidences. As applied to the present case, this theory would hold that Mr. Retsky (and Winston & Strawn) forever owes ethical duties to LifeSync Corporation (formerly known as GMP/Wireless Medicine, Inc.) because GMP/Wireless

---

[5] Boston Scientific addressed the Motorola-based conflicts arguments in its opposing brief. (Dkt. # 95, Boston Scientific's Opp. Br. at 3-7.)

Medicine, Inc. was a former client of his former law firm (Brinks Hofer Gilson & Lione).  Of course, such a result would be utterly impracticable and is not mandated by the ethics rules.  Nonetheless, this is precisely what Plaintiff urged the Court to adopt in its Reply Brief.

As an initial matter, it is important to note that Mr. Retsky did not personally represent LifeSync Corporation (formerly known as GMP/Wireless Medicine, Inc.) at his prior firm.  Despite Plaintiff's contrary assertion in its Reply Brief,[6] Plaintiff now acknowledges that "no claim is made that Retsky individually represented GMP/LifeSync…."  (Dkt. #116, Plaintiff's Resp. to Mot. to Strike, at 1.)  Consequently, it is undisputed that LifeSync Corporation was not Mr. Retsky's client or former client.  (See supra Sect. II, Para. 13.)

Instead, Plaintiff seeks to retroactively link Mr. Retsky to LifeSync Corporation (and perhaps LifeSync Holdings, Inc.) through an imputed conflicts theory based on his tenure at Brinks Hofer.  " … [H]is representation inured through his position at Brinks Hofer."  (Dkt. #116, Plaintiff's Resp. to Mot. to Strike at 1.)  However, this would be an unreasonable and inappropriate expansion of the imputed conflicts rules.  Model Rule 1.9 of the *Model Rules of Prof. Conduct* ("Model Rules") governs duties to former clients.[7]  This rule confirms that Mr. Retsky and his law firm should not be disqualified from representing Boston Scientific in the present case.  As a result, Model Rule 1.10 and its screening rules cited by Plaintiff are not implicated.

---

[6] Plaintiff's Reply Brief claimed, "Boston Scientific nevertheless ignores the conflict in using Retsky to attack the validity of patents in which Retsky's present and past clients, Motorola and GMP/LifeSync, each have a present interest."  (Dkt. #106, Plaintiff's Reply Br. at 2.)

[7] A copy of the ABA's Model Rule 1.9 with comments is submitted as Ex. 12.

### A. Model Rule 1.9(a) Does Not Disqualify Mr. Retsky/Winston & Strawn Because Mr. Retsky Did Not Represent LifeSync Corporation

Model Rule 1.9(a) describes duties of a lawyer "who has formerly represented a client." It is inapplicable here because there is no dispute that Mr. Retsky did not represent LifeSync Corporation or LifeSync Holdings, Inc. while at Brinks Hofer or elsewhere. (See supra Sect. II, Paras. 10, 13. ) Plaintiff must rely on an imputed conflicts theory, which is governed by Model Rule 1.9(b).

### B. Model Rule 1.9(b) Does Not Disqualify Mr. Retsky/Winston & Strawn Because Mr. Retsky Does Not Have Actual Knowledge of LifeSync Corporation's Confidences

Model Rule 1.9(b) governs potential conflicts where "a firm with which the lawyer formerly was associated had previously represented a client" in a substantially related matter. Model Rule 1.9(b). Consequently, Rule 1.9(b) governs Plaintiff's claim that Mr. Retsky (and his firm) must be disqualified because Mr. Retsky's prior firm represented GMP/Wireless Medicine, Inc. However, the ABA's Comments to Rule 1.9(b) clarify that disqualification applies only where the lawyer has "actual knowledge" of protected information:

> "Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(c). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict."

Model Rule 1.9, Comment 5.

This Comment clarifies that Mr. Retsky and Winston & Strawn are not disqualified merely because Mr. Retsky was a partner at LifeSync Corporation's[8] former law firm.

---

[8] LifeSync Corporation was known as GMP/Wireless Medicine, Inc. during the time it was represented by Brinks Hofer.

-7-

Disqualification is applicable only where the lawyer, Mr. Retsky, has "actual knowledge" of protected information. *Id.* He does not. (See supra Sect. II, Para. 13.) As a result, neither Mr. Retsky nor Winston & Strawn should be disqualified from representing Boston Scientific in the present case.

Moreover, the ABA's comments relating to Rule 1.9(b) confirm that it is not an absolute bar. It is intended to be interpreted so as to "not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association," and "not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel." Model Rule 1.9, Comment 4. Comment 4 also notes:

> "[I]t should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. *If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another* and of the opportunity of clients to change counsel."

Model Rule 1.9, Comment 4 (emphasis added).

Based on the ABA's Comment 4, it is clear that the imputed conflicts rules must be interpreted under a rule of reason. In the present case, imputing a conflict of interest on Mr. Retsky and his present law firm, Winston & Strawn, would be unreasonable. As noted above and as more fully set forth in the Retsky Declaration, Mr. Retsky did not represent LifeSync Corporation in the 2004 *Nonin* litigation, nor did he have "actual knowledge" regarding that entity's protected information. Mr. Retsky's primary role at Brinks Hofer during that timeframe was as the relationship manager for Motorola, Inc.'s work. In fact, Mr. Retsky delegated day-to-day responsibility for Motorola's representation in *Nonin* to his colleague, Ms. Addy. Mr. Retsky did not even enter an appearance in *Nonin* until May 14, 2007, which is after he left the

Brinks Hofer firm. More importantly, he did not enter his appearance until *after* LifeSync Corporation terminated its relationship with the Brinks Hofer firm in 2005 and transferred its case to Dykema Gossett. (See supra Sect. II, Paras. 10-15, 20.)

To arrive at Plaintiff's desired conclusion—that Mr. Retsky and his new firm owe a duty of loyalty to LifeSync Corporation—the Court would need to find that: (1) Mr. Retsky had "actual knowledge" of LifeSync Corporation's protected information during his time as a partner at Brinks Hofer despite his Declaration stating that he did not; (2) an imputed duty survived LifeSync Corporation's 2005 termination of Brinks Hofer and transfer to Dykema Gossett; (3) this imputed duty survived Mr. Retsky's departure from Brinks Hofer and traveled with him to Howrey LLP; and (4) this imputed duty survived Mr. Retsky's departure from Howrey LLP, traveled with him to Winston & Strawn, and by extension is now imputed to Winston & Strawn and its lawyers. This is a bridge too far. Not surprisingly, Plaintiff cited no authorities in support of its attempt to impute a conflict of interest on Mr. Retsky and his new firm where he lacks "actual knowledge" of LifeSync Corporation's protected information.

As described under the Comments to Model Rule 1.9, it is clear that disqualifying Mr. Retsky and Winston & Strawn would be a "radical curtailment" of a lawyer's ability to move from law firms. Model Rule 1.9, Comment 4. This is particularly stifling to a lawyer such as Mr. Retsky who has specialized training and skill in the electrical engineering and telecommunications fields. Most importantly, Mr. Retsky has no actual knowledge of protected information relating to LifeSync Corporation. (See supra Sect. II., Para. 13.) Under these facts, it would be unreasonable to apply the imputed conflicts rules in a manner that would bar Mr. Retsky and his new law firm from representing Boston Scientific and would deprive Boston Scientific of its chosen counsel.

## IV. PLAINTIFF OBFUSCATES THE "LIFESYNC" ENTITIES FOR ITS PATENT ROYALTIES ARGUMENT

Although the Court can end its inquiry because Mr. Retsky did not personally represent LifeSync Corporation or have "actual knowledge" of its protected information, it bears noting that Plaintiff's Reply Brief relies on alleged harm to the wrong "LifeSync" entity.

Plaintiff alleged that "GMP/LifeSync's" income from royalties would "inherently be diminished if the asserted patents are held invalid." (Dkt. #106, Plaintiff's Reply Br. at 2.) Plaintiff now defines this "GMP/LifeSync" entity as a shorthand reference to GMP/Wireless Medicine, Inc. and LifeSync Holdings, Inc. "[B]oth names refer to the same entity, which changed its name, as pointed out in Body Science's initial motion…." (Dkt. # 116, Plaintiff's Resp. Br. at 1.) This statement is demonstrably false and it is a material misrepresentation. GMP/Wireless Medicine, Inc. changed its name to LifeSync Corporation—not LifeSync Holdings, Inc. (See supra Sect. II, Paras. 3-4.) LifeSync Holdings, Inc. is a separate corporate entity. (Id.) This is an important distinction.

According to Plaintiff's Reply Brief, Mr. Retsky owes a duty of loyalty to former clients of the Brinks Hofer firm. The Brinks Hofer client was GMP/Wireless Medicine, Inc., who subsequently changed its name to LifeSync Corporation. As a result, any duty of loyalty—which Boston Scientific disputes—would extend to LifeSync Corporation; not LifeSync Holdings, Inc. There is no evidence whatsoever that LifeSync Holdings, Inc. was a former Brinks Hofer client. Consequently, any loss of royalty income to LifeSync Holdings, Inc. occasioned by invalidating the patents is irrelevant to the motion to disqualify. Mr. Retsky and his law firm owe no duty of loyalty to LifeSync Holdings, Inc. and are therefore free to take adverse positions.

Plaintiff's Declaration of Patricia M. Chicvara does not salvage the lost royalties argument. (Dkt. #106-1, Chicvara Decl.) In fact, it confirms that GMP/Wireless Medicine, Inc.

changed its name to LifeSync Corporation, not LifeSync Holdings, Inc. (Id. at Para. 1.) Although the Chicvara Declaration lacks clarity because it creates yet another shorthand reference ("LifeSync," referring to both LifeSync Corporation and LifeSync Holdings, Inc.), it states that "LifeSync" receives patent licensing royalties from third parties via the asserted patents. (Id. at Para. 3.) It further states that "LifeSync" assigned the asserted patents to Plaintiff Body Science. (Id. at Para. 2.) Piecing this together, it is clear that this royalty-earning "LifeSync" entity is LifeSync Holdings, Inc. because it was the prior owner of the patents. (See supra Sect. II, Paras. 5-6.) Mr. Retsky's prior firm, Brinks Hofer, did not represent LifeSync Holdings, Inc. As a result, the royalties argument is not relevant to the motion to disqualify Mr. Retsky and Winston & Strawn.

## V.   CONCLUSION

Plaintiff has now asserted three conflicts theories. None withstand scrutiny. Plaintiff's original motion to disqualify was based on two arguments: (1) that Mr. Retsky's and Winston & Strawn's representation of Boston Scientific would be materially adverse to former (and existing) client Motorola, Inc.; and (2) that as Motorola's alleged "successor in interest" to the asserted patents, Plaintiff was entitled to bar Mr. Retsky from representing Boston Scientific in a manner adverse to *Body Science*. Boston Scientific refuted those arguments in its opposing brief by clarifying: (1) that Motorola has no interest in the present litigation, and (2) that ethical duties do not travel with patent assignments. However, Plaintiff's Reply Brief raised an entirely new third argument: that Mr. Retsky and his law firm must be disqualified because Mr. Retsky's "past client," "GMP/LifeSync," has a present interest in the patents at issue. (Dkt. #106, Plaintiff's Reply Br. at 2.) As explained above, this new argument similarly fails because Mr. Retsky did not personally represent LifeSync Corporation or LifeSync Holdings, Inc., nor did he

-11-

have "actual knowledge" of their protected information.  As a result, this new argument does not salvage Plaintiff's motion to disqualify.


Dated:  October 21, 2011					Respectfully Submitted,

							**BOSTON SCIENTIFIC CORPORATION**

							By:	/s/ Thomas M. Williams
								One of their attorneys

								Thomas M. Williams
								WINSTON & STRAWN LLP
								35 West Wacker Drive
								Chicago, IL 60601
								Telephone: (312) 558-5600
								Facsimile: (312) 558-5700
								Email: tmwilliams@winston.com

OF COUNSEL:

Matthew A. Wolf
Edward Han
Marc A. Cohn
ARNOLD & PORTER, LLP
555 Twelfth Street NW
Washington, D.C. 20004-1206

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 21, 2011, a true and correct copy of **BOSTON SCIENTIFIC'S SUR-REPLY BRIEF REGARDING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL** was filed with the Court's CM/ECF system, which will send electronic notice to all attorneys of record.

/s/ Thomas M. Williams

CHI:2586126.3